while we're changing counsel. I'm just going to run and get my glasses. I was squinting a lot. You probably now know why. Thanks. Thank you. I'm just going to get mine, too. Sorry about that. So is it Ms. Levinson? Levinson, yes. Okay, Ms. Levinson. You have reserved two minutes for a vote, so that gives you eight minutes to begin. So the floor is yours. Thank you. Good morning, Your Honors. Carly Levinson from the Federal Public Defender Office for the District of Connecticut on behalf of the appellant Mr. Stephan Bagley. The District Court Judge Williams varied upward and imposed a sentence of 84 months on Mr. Bagley. 21 months above the top end of the guidelines, 30 months above the government's requested sentence, and 37 months above the average sentence received by similarly situated defendants. Mr. Bagley was 21 and 22 years old at the time of his offense with zero criminal history, a serious chronic health condition, and he had maintained a perfect record of compliance on pretrial release. The District Court didn't adequately explain why a guideline sentence in this case, which was a significant guidelines range, was insufficient to serve the purposes of sentencing for Mr. Bagley, especially given that he had never served any time in prison before. In explaining its sentence, the District Court focused primarily on the seriousness of the offense. But the guidelines range of 51 to 63 months already took into account most of the factors that the Court identified as making Mr. Bagley's offense. so serious. This aspect of how the Court double counted aggravating factors that were already factored into the guidelines. Well, does it make a difference if I'm a straw purchaser for guns and I sell to felons and others just sell to people who don't want to go through the red tape or the paperwork of getting a license? Is it fair to make a distinction between those two defendants? I think it is fair to make a distinction. And our point is that that distinction, the one that Your Honor just noted, that's factored into the guidelines range, because there's a plus-five enhancement that was applied for knowingly transferring a firearm to someone who has certain priors or who may use the firearm unlawfully. So the guidelines range here, I think, well, first of all, just starting with Well, I mean, it's sort of curious to hear federal offenders be sort of saying that the guidelines, we've really got to respect these guidelines. I mean, I looked at the Sentencing Commission data on this last night. Sentencing in the District of Connecticut are below guidelines nearly 75 or 80 percent of the time. And so it's frequently the case that judges are going below the guidelines. And I'm just curious, are they justifying those below-guidelines sentences, you think, with more in the record than what took place here? I think when judges in our district impose a below-guidelines sentence, they do explain why the guidelines sentence in that case is greater than necessary to serve the purposes of sentencing. And, you know, of course, all district judges are bound by the Parsimony Clause of 18 U.S.C. 3553. Here, looking at this issue with double-counting the guidelines factors, this is really akin to the procedural error that this Court found very recently on a panel in United States v. Ramos. I believe that was a panel that Judge Robinson was a part of, where this Court remanded to Judge Williams a 72-month sentence in a case where the guidelines range was 30 to 37 months and the government had requested a 46-month sentence. So the numbers are not so different from what we have here on exactly this basis, that the district court didn't adequately explain why the factor that it mostly focused on justified an upward variance when the guidelines range already took into account that factor. And we're not saying that the court can't... It's hard for me to imagine whether if the government... In a situation where these same facts, the judge said, oh, I'm going to give you time served or I'm going to give you no custodial sentence because you're young, because you've spent no time in jail before, because of the things you just said. It's hard for me to imagine that if the government appealed that sentence because the guidelines already take into account all these things, that you'd be saying that the district judge, yeah, should have followed the guidelines. Well, the guidelines don't take into account those things. The fact that if you're in a criminal history Category 1, presumably you've never been in jail before. The guidelines usually say you shouldn't take age into account, but that's just recently changed, I suppose. That's not necessarily true as to criminal history. Someone can be in criminal history Category 1 if they have one criminal history point or if they have prior convictions that are too old to count. Criminal history Category 1 contains people who do have some minimal criminal history and who may have spent time before incarcerated. And it also includes people who are true zero-point offenders, which the guidelines actually do provide an extra reduction for zero-point offenders in some cases, but not in this case, not for firearms offenses. And so Mr. Bagley's status as a zero-point offender wasn't factored into the guidelines. What was taken into account in the guidelines was the number of firearms, the fact that they were provided to people who may use them for an unlawful purpose over certain prior convictions, the fact of, excuse me, the obliterated serial number. I mean, these were the things that the judge specifically listed in the statement of reasons as justifying this upward variance, but they led to very significant enhancements in the guidelines range. Even the base offense level took into account the fact that this is a firearms trafficking offense. And then you have plus four. And so these PDA factors, you know, really merit a higher sentence. And we would typically defer to the judge's views on that. So I guess I'm trying to understand how advisory are these guidelines, and what does the judge have to say when the judge thinks that the guidelines are not enough? The judge has to explain why, if it's focusing on factors that were already part of the guidelines calculation, why the upward variance. I mean, that's exactly what the panel. The judge can't just say that I don't agree with the guidelines calculation on this. I just think it doesn't do justice to the 3553A factors. It has the balance wrong. The judge can certainly disagree with the balance, and the district court is given significant deference to do its own balancing. Is that what happened here? In our view, that's not what happened here. In our view, first of all, there was this procedural error related to the double counting of the aggravating factors that were already factored into the guidelines range. And also, again, we're arguing that the sentence was substantively unreasonable. And this Court and the Supreme Court has said that the greater the upward variance, the more explanation that's required. And so it may not be enough for the judge to just say, I balanced the 3553 factors differently. But, yeah, I'm wondering, and I should go back and look at this. In Sindema, we were very clear what the judge has to say, right? If you're relying on factors that are already baked into the guidelines, and you've identified three significant factors the Court relied on that are clearly baked into the guidelines, they were the focus of a particular added point to the base offense level, then the Court must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation. In other words, why the baking in that happened wasn't enough because this person was particularly whatever. Is that a substantive reasonableness issue or a procedural reasonableness issue? Well, that's a good question. I think they bleed together and they're related. In the recent Ramos decision that I mentioned, the Court identified that as a procedural error. And I think it is and can be a procedural error. But I think it can also lead to a sentence that's substantively unreasonable. So I do think there's an interplay between the two. But I'd like to focus on Sindema rather than Ramos, because was Ramos a published opinion? It was not, no. Yeah, and Sindema was. So Sindema's precedent. And so one of the questions that this back-and-forth is causing me to ponder is, can the Court say, for example, nothing about this particular offender is particularly unique relative to the minority of cases, but I don't think the guidelines adequately account for this particular factor. I think this particular factor should bear more weight. Say the Court said that. What do we do with that? Is that affirmable? Is that within the Court's discretion to say I just disagree with the guidelines and there's nothing specific about this person? Well, I think there has to be a specific reason given. That is a reason, right? The reason is that the guidelines just don't properly account for firearm trafficking and its seriousness and who it's going to in terms of felons and things like that. A judge can certainly give a higher variance upward based upon the fact just that the guidelines doesn't sufficiently consider the dangerousness or the seriousness of that type of conduct, right? Yes, I do think there's definitely case law to support the idea that a judge can have a policy disagreement with the guidelines, for example, Kimbrough, you know, other cases, but that's not what happened here, or at least it's not what was explained here. The judge just referred to things that are accounted for in the guidelines as the reason it didn't say anything about the guidelines policy-wise or otherwise. Correct. And it really wasn't until the end of the sentencing proceeding I was counseled below that it was indicated at all that the court was considering an upward variance. You know, the discussion that at least I thought that we were having at sentencing was about a guideline sentence or a below-guideline sentence, and certainly courts can vary upward, but there wasn't a discussion about a policy disagreement with the guidelines here. And did it become obvious, and I'm just sort of trying to figure out, there's the sentencing transcript and then there's the statement of reasons. Was it clear at the end of the sentencing that the upward variance was predicated in part on these three factors that were already baked in, or did that only crystallize with the statement of reasons that specifically identified them? No, it was stated within the sentencing transcript as well as in the statement of reasons. I know I'm beyond my time. I'll return on rebuttal unless you have other questions for me now. No, I guess we can wait for rebuttal. Thank you very much. Thank you. All right. Mr. Gresham, you're back. You have 11. All right. The floor is yours. Okay. Thank you. May it please the Court, Kenneth Gresham for the government. The district court's sentence of 84 months imprisonment followed by three years of supervisory release was both procedurally and substantively reasonable. Contrary to the defense's arguments, the court did not punish Mr. Bagley for not cooperating with law enforcement in the recovery of firearms. The district court appropriately highlighted that some of the firearms that Mr. Bagley had trafficked were later recovered in connection to investigations of other crimes. And additionally, the district court did not punish Mr. Bagley for his supposed connection to any retaliatory shooting. To the contrary, the court made clear that Mr. Bagley's involvement had not been alleged and that he was in the hospital when the shooting occurred. So both of Mr. Bagley's procedural arguments fail under any standard of review, but they are particularly unconvincing on plain error review. As to the substantive reasonableness, the district court's sentence was substantively reasonable. Here, the district court carefully identified the aggravating factors, the aggravating facts that Before you get to the substantive, I just wanted to ask you a question because Ms. Levinson didn't address it, but on this issue of silence or non-cooperation, I understand in the sentencing transcript the judge made reference to the fact that, you know, some of the guns were found by police in connection with other crimes and then noted that not because of the defendant's effort. So obviously the district court should focus on the fact that they were recovered in connection with other crimes. But as to whether or not he was considering the fact that it wasn't because the defendant helped, why isn't it significant that in the statement of reasons, he specifically highlighted that again, including with capital letters, and not the defendant's efforts? Doesn't that suggest that somehow that was being factored in, that you put that in the statement of reasons and you put capital letters on the not? Why would he mention that in the statement of reasons if he wasn't considering the non-cooperation, I guess, is my question. Okay. So when looking at the statement of reasons, the district court, when you look at the whole statement, the district court repeated that the recovery of the firearms in connection with the investigated, investigation showed the benefits to public safety in the sentence imposed. So here the district court was making a distinction that the recovery of the firearms in this case was an aggravating factor because. I understand that completely. Right. I said at the beginning of my long, perhaps complicated question, that that would be a proper consideration. But why mention again that the defendant didn't help? He didn't help, which I think you would agree. You can't vary a sentence upward because he didn't walk in to law enforcement and say, here's who I gave the guns to so that you can help get them back. Right? So it is often the case in gun trafficking crimes that the recovery of firearms, if a defendant assisted in the recovery of firearms, that the defendant would be arguing that it's a mitigating factor.  So here I think what the district court. If the defendant doesn't do that, you can't give him an increase in sentence. I think you can see that in your brief, right? Right. But we contend that the district court did not rely on the fact that there was silence. The district court was merely trying to distinguish the fact that the nature and circumstances of the recovery of the firearms were aggravating factors because they were used. So he mentioned the silence twice for what reason? What was the relevance of the silence if he wasn't considering it? Why would he mention it twice, including capital letters? So are you talking about in the statement of reasons? Yeah. He mentioned it twice. If it wasn't relevant, if the only relevance is the proper consideration that you and I agree on, why would he have mentioned, not just orally, but in the statement of reasons and capitalized it if it had no bearing, no relevance to the proper consideration? Well, what the district court was doing was just highlighting that it viewed the recovery of the firearms as an aggravating factor and that it was that the defendant did not participate in its recovery and, therefore, it could not be used as a mitigating factor and that it's clear that when you look at the entire statement of reasons, the fact that there were firearms used in connection with other crimes, the court found that there was a real need to have a sentence that posed, that gave for public safety. On the substantive reasonableness, I guess the major question would be, if he's bearing upwards 30 months above what the government asked for, right? Correct? 30 months above what the government requested? That's correct, Your Honor. If the things that the judge pointed to in the statement of reasons and its sentencing were things that are all accounted for in the guidelines, what would be the basis for such a pretty drastic departure from the guidelines and from what the government requested? What was the basis? So here, the district court actually pointed to various factors that were not baked into the guidelines. So, yes, it is true that the fact that the obliteration of serial numbers was calculated into the guidelines. Here, the district court also made a note that the fact that the defendant was trying to evade law enforcement by discussing with his co-conspirators, by discussing staging a possible robbery, that that was another showing of trying to evade law enforcement that was not baked into the guideline calculation and the judge found that to be a significant factor that he considered warranted upward departure. Let me ask. Sorry to interrupt. I think what you're getting at is there's a laundry list of reasons and not all of them were baked into the guidelines. That's correct, Your Honor. There's a number. So what I'm trying to figure out is, given what we've said, that if you're going to impose an upward variance based on a factor that's already incorporated into the guidelines, you must specifically articulate the reasons why this particular defendant's situation is different from the ordinary situation covered by the guidelines. Let's assume there are six factors and three of the factors are baked into the guidelines and the court never attempts to explain why, even though the guidelines have already been bumped way up on account of those factors, it's going to rely on those factors for a further upward variance. The court never addresses it. Is it your position that it's okay if there are other conditions? We don't know what portion of the upward variance is attributable to any of those individual rationales. Well, here the court, during the sentencing hearing, went through a number of facts that it found compelling in connection with the 3553A factors. So another reason, in addition to evading law enforcement by possibly talking about staging a possible robbery of the firearm. I'm sorry to interrupt. I hear what you're getting and you're absolutely right. There were other things the court listed that could support varying upward to some degree and I think that's a good point in your favor. The question that I'm asking is if there were other points that were also in the list that the court also seemed to rely on that weren't legitimate points to upward vary, don't we have to set it back so that the court can pull those out or provide the necessary explanation to rely on those? And it may still vary upward based on the remaining factors, but we can't sit here and say, well, even without those factors, the three things that were legitimate would have driven this up by 30 months or whatever the upward variance was. What am I missing? So when looking at substance of reasonableness, I think the court has to make an analysis as to whether the sentence itself was so shockingly high that there was some type of miscarriage of justice. Here, that's not the case based on the record. Well, and that's why I asked your friend across the aisle, is this procedural or substantive? And I'm well aware that Ben Ramos, who treated it as procedural, was involved in that. But I also have to acknowledge that I continue to struggle to understand exactly where it fits into the framework. Is it your view that the sort of Sinema principle is a sort of substantive reasonableness principle and it isn't a principle that — because when you look at the notion that the court must articulate reasons, that's typically something that we describe as procedural reasonableness. Articulating the reasons, yes. But I think when you're looking at — you were asking about the substantive reasonableness of this sentence. Well, I'm trying not to box myself into whether we're talking about procedural or substantive reasonableness. I'm really trying to focus on the requirement that the court articulate reasons. And you're not — you aren't contending that the court offered reasons why these three factors that were baked in warrant an additional upward variance. You're making the legitimate point that there were other factors that might create an affirmable upward variance. But I — So I don't think it was — it would be incorrect for the judge to say the fact that some of these firearms had obliterated serial numbers and that that was part of the calculation, that just merely stating that fact is incorrect. It was perfectly appropriate for the judge to acknowledge that in addition to doing that, you're also evading law enforcement by trying to stage a robbery. In addition to that, unlike other defendants, you were actually shot yourself. So when — you knew that there was dangers of firearms trafficking because you experienced the consequences of illegal firearms. And the judge made that point in response to when defense counsel was saying that while being arrested somehow was this like moment of enlightenment for the defendant, the judge goes on to say, well, you know, I don't find that factor to be — that fact to be very compelling because before you were arrested, you yourself experienced a violent act where you were shot. And then after that, you continued to engage in gun trafficking over a prolonged period of time. You expressed in text messages that you knew what you were doing was wrong. You were saying that if you got caught, your case was going federal. You were — so you were acknowledging that this could have been a — that you could be in trouble for this. You would experience the violence that comes with gun trafficking in addition to planning on staging a robbery to evade law enforcement. And the court was highlighting that, you know, these are very compelling facts that warrant an upward departure. Why did the government not view it that way? The government in this case didn't even seek a high-end sentence. If all the things that you're saying made this so different from other gun cases, why did the U.S. Attorney's Office not recognize that and not even ask for a high-end sentence? Isn't that pretty unusual? Well — Did they not understand these things? I think that the analysis here is whether or not the court had a reason — whether or not the court looked at the totality of the circumstances and had wide latitude. It's not for this Court or the government to — Well, I'm asking whether it's shockingly high or not. Can't we consider the fact, for example, that the government, you know, obviously is in charge of protecting the people and all the other factors you just pointed to, what, 54 months was sufficient, and the judge gave 30 months higher than it? We can't consider that? Well — Whether it's shockingly high or not? No, because this Court does not consider what — How about other judges? Can we consider — Is government aware of any other gun — I think it's an unfair question, but it's part of the analysis. Other gun cases of this nature where a judge has gone 30 months above what the government asked for, you know, well above the high end of the guideline. So — I'd like to answer — 21 months above the high end. I'd like to answer the first part of your question. It's clear that this Court does not consider what weight it would have given a particular factor, but instead considers whether the factor, as explained by the district court, was reasonable. So if you — it may have been that if you were the district court judge that you would have applied different weight to various factors. I'm talking about any district court judge that has looked at similar facts and arrived at the same sentence. Not me. Any judge. Any judge. In Connecticut, any judge, in any other state, has looked at the same type of factors that you're discussing here and said, you know what, 84 months, 7 years is necessary. Well, what I would say is that there — this is not the first time that a district court has varied upward on a gun trafficking — I understand that. You don't just look at upward variances generally, right? Looking at — for this type of conduct. Right. So what case are you aware of? I don't have anything off the top of my head, but I — what I would say is that when you look at all of the aggravating factors that the judge listed in connection with the facts of this case, the sentence was not so shockingly high that it rendered a miscarriage of justice. Here, the court identified that because — that it did not — that it offered — that it did not find compelling defense counsel's argument that the fact that he had been arrested was some life-changing event, and instead found more compelling that the defendant had been shot himself and continued to engage in firearm trafficking after that, and said that, you know, that shows that you need a longer sentence in addition to the fact that you are trying to evade responsibility by planning a staged robbery. If there was a case where the guideline range was 5 to 7 years, and federal defenders walked in and said, a judge, we're requesting 3, and the judge said, 3, I'm giving you time served. Would the government consider that problematic or something that might indicate a shockingly low sentence where the judge went significantly below what the federal defenders asked for, or not? You wouldn't think we should consider that? But the judge gave way below what the federal defenders asked for. That happens all the time, doesn't it? But that does happen, where I've had cases where a judge will give what I believe to be a low sentence on something. But I think the analysis here Well, the point is, I mean, the government doesn't typically appeal those, but if we're going to be this strict on upward variances, then I suppose maybe we're going to be this strict on downward variances, too. The government will appeal more cases and we'll get to really impose some order on sentencing. I think that's absolutely correct. Here, I think what we have to look at is whether or not, based on the factors that were articulated by the district court judge, whether this sentence was so shockingly high. And I think that the compelling reasons that the judge listed, as I've mentioned before, that were not baked into the guideline calculations, support an upward variance, and that there was no miscarriage of justice here. Also One of the things that the court focused on were the crimes, the subsequent crimes committed by the guns that Bagley trafficked. He listed three or four, and then he also said, and there's others, other guns that haven't been recovered, that the community might feel the impact on going forward. Is that a basis for a variance? Yes, Your Honor, because it underscores the seriousness and dangers that gun trafficking poses. The fact that there's so many firearms that are still on the streets, and also highlighting that in the few that were recovered, they were all used to commit other crimes, including a shooting, including a burglary. The fact that the judge saw that and said that this underscores the dangers of what you what your criminal conduct did, I think is a compelling factor that the court was allowed to consider in deciding its upward variance in conjunction with the other reasons that it gave. So when looking at the totality of the circumstances here, where you look at the defendant's conduct, you look at the fact that the conduct happened over an extended period of time with a lot of individuals, and that his role in the offense was that he was the straw purchaser. He's the one that's going and purchasing these firearms using a permit that he had and then distributing them to other individuals. So his role in the crime, the fact that some of these guns were used to commit other crimes, and the fact that he continued to engage in this conduct even after himself being shot himself, and then the fact that he's staging a robbery to evade law enforcement, these are all compelling factors that were perfectly reasonable and just do not rise to the level that this sentence was so shockingly high and unsupported as a matter of law to damage the administration of justice. And then on top of that, as I stated before, the procedural reasonableness of both stating the circumstances of the recovery of the firearms as well as stating the circumstances of the firearm, that was also procedurally reasonable. So if there are no other questions, I will rely on what I've said and end on the government's brief. Thank you. Thank you very much. I didn't address in my opening our arguments about the district court punishing Mr. Bagley for his non-cooperation and also for tying the seriousness of the offense to an alleged retaliatory shooting during which Mr. Bagley was hospitalized. To us, these are troubling procedural errors. I understand that plain error is a high standard, but as Judge Bianco noted, the language in the statement of reasons as to Mr. Bagley's non-cooperation, it's hard to make sense of it if it doesn't have the meaning that we're attributing to it. But even if the court, or if this court can't find at a plain error standard that the district court wasn't punishing Mr. Bagley for his non-cooperation and or for this shooting, if those things didn't play a role, it's even harder to understand why he imposed this stark of an upward variance, especially where there was significant mitigation that was completely discounted by the court in ways that also are hard to understand. For example, the district court's treatment of Mr. Bagley's record on pretrial release, which was, I think indisputably, an excellent record on pretrial release, but the court's interpretation of that record was, well, he's just smart enough to know to keep his nose clean until sentencing. It's not clear why the district court had that interpretation of the record, but that was how the district court chose to weigh Mr. Bagley's record on pretrial release. Going to this issue of the other factors that the court pointed to that may not have been explicitly baked into the guidelines range, we addressed in our reply how many of those factors, too, overlap with the aggravating factors that are baked into the guidelines range. And the bottom line is that if there's anything left after you remove the factors that are baked into the guidelines range, there is a little bit left. Our view is that those factors that are left can't bear the weight assigned to them of this size of the upward variance, which is what the court asked. Is it like that, or is it enough to say it was error to rely on those faked-in factors without providing an explanation, and we can't conclude that the error is harmless because it's clear that they bore some weight and we can't discern what the court would have done without it? Do we have to go further and say the remaining factors would be insufficient to support this sentence, or is that an argument for... I think the more limited remand that you suggested could also be appropriate, yes. I think there are multiple ways that this court could, and bases that this court could send this back to the district court, and I think that it would be important to give instructions as to the requirements of what would need to be articulated to actually justify the upward variance, and also to give instructions that the court sentence can't punish Mr. Bagley for his non-cooperation. Any reason why the instructions we would be giving in that regard wouldn't also apply to downward variances, which are the vast majority of sentencing variances? I mean, again, in your district, barely 20% are within guidelines, the vast majority are below guidelines, usually far below guidelines. Would you agree? Yes. Yes, in our district, yes. So are we going to be as scrutinizing of below guidelines variances? I mean, the court would have to look... Is there any reason to make a distinction is what I'm asking. Between downward and upward variances? Yes. Well, I mean, I do think that the parsimony clause asks the court to essentially impose the least sentence that could be imposed that could sufficiently achieve the purposes of sentencing. Why factors that are in the guidelines don't meet that standard, right? Certainly, yes.  And on that note, and I'll wrap up, but on that note, our arguments about what an outlier this sentence is, those aren't limited to or focused on what's happening in the District of Connecticut. We cited nationwide statistics as to why this upward variance is such an outlier. No, upward variances are an outlier. They rarely, rarely happen. The vast majority are downward variances, but the government doesn't typically appeal those, which means we don't really look at them very often. Only in rare cases do they. So upward variances virtually always get appealed, which is why it becomes almost a one-way ratchet, or it feels like it. But I'm just trying to figure out whether there should be some difference in how courts should be addressing upward and downward variances and whether the same requirements should be made for both. And so, other than the parsimony principle, you're not saying there's any distinction to be made? No, I don't think so. I think the court needs to adequately explain its sentence, even in the case of a downward variance. Great. All right. Well, thank you both. Thank you. We'll reserve the decision. We've got kind of a double-barreled one on this case, different defendants, but the same case and the same judge. Thank you.